## TOM DAVIS v. THE STATE.

### No. 4255. Decided October 25, 1916.

**Burglary—Accomplice—Corroboration—Insufficiency of the Evidence.**

Where, upon trial of burglary, the conviction depended upon the evidence of an accomplice, which was not corroborated in any material fact, the conviction could not be sustained. Following Welden v. State, 10 Texas Crim. App., 400; distinguishing Martin v. State, 21 Texas Crim. App., 1.

Appeal from the District Court of Anderson. Tried below before the Hon. John S. Prince.

Appeal from a conviction of burglary; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*Kay & Seagler,* for appellant.—On question of accomplice testimony: Nowlin v. State, 175 S. W. Rep., 1070; Truelove v. State, 71 id., 601; Hanson v. State, 11 id., 37; Crowell v. State, 6 id., 318.

*C. C. McDonald,* Assistant Attorney General, *J. D. Pickett,* and *N. B. Morris,* for the State.—On question of corroboration of accomplice: Jones v. State, 4 Texas Crim. App., 529; Nourse v. State, 2 id., 304; Payne v. State, 40 Texas Crim. Rep., 290; Nash v. State, 61 id., 259; Warren v. State, 149 S. W. Rep., 130, and cases cited in opinion.

DAVIDSON, JUDGE.—Appellant was charged with burglarizing a railroad car under the control of S. B. Mobley, without his consent, etc. On his trial the jury awarded him six years confinement in the penitentiary.

The court charged in the ordinary stereotyped form. Charley Lee Thornton testified as a witness for the State that he had been convicted and sent to the penitentiary for burglary. The conviction occurred in Grayson County on or about March 9, 1903. It is shown by bill of exceptions he was discharged on the 14th day of April, 1915, which would make twelve years and little over in the penitentiary on four years' conviction. There seems to have been two convictions for two years each. There was a pardon extended the witness Charley Lee Thornton on the 8th day of June, 1916, in which it is recited, among other things, he was pardoned for the reason he was wanted as a witness in a case now pending in court, and it further recites that he was discharged from the penitentiary on the 14th day of April, 1915. Certified copies of the records of Grayson County show that Charley

Lee Thornton was convicted on the 9th of March, 1903, in cause No. 8893, for burglary, and that on the 11th of March, 1903, sentence was duly passed on him, and that he was convicted in the District Court on the 9th of March, 1903, in cause No. 8900, for the offense of theft of property over $50 in value, and sentence was passed on him for that on the 11th of March, 1903, for a term of two years, the sentence being made cumulative, which entitled him to his discharge, if he served the full term, in 1907, but the pardon recites and the facts seem to show that he was not discharged from the penitentiary until April 14, 1915. He was pardoned by the Governor to enable him to testify in this case. Thornton testified that he and Tom Davis, appellant, got goods out of a box car in the south end of the International & Great Northern Railroad yards at Palestine; that he did not know Mr. Mobley, the station agent. He describes the manner of the burglary, and states that he and appellant took goods out of the car and hid them; that appellant broke the seal and witness stayed outside and received the goods out of the car. The car was sealed and appellant broke the seal. Witness says he helped pull the car door open, and appellant went in and he stayed out to watch; that appellant would hand the goods out and he would take them. This was about 1 or 2 o'clock at night. Appellant as he handed them out said: "Here are some shoes, few other things, here take them; here is some more stuff," and after they finished they closed the door, and he says Davis in closing the door put the seal on it again; that they went down the track and left everything and did not carry anything with them; they went in the yard and got some sacks and went back and got the goods and carried them out. In other words, they went down the railroad track and got some sacks, returned, put the stolen goods in the sacks and carried them off some distance, secreted them by digging a hole in the ground and covering it up; that they buried the boxes in a little culvert in a branch. He says: "I told Sheriff Guinn where I buried these boxes afterwards; I wouldn't tell him at first. We had put the stuff in sacks; we carried the stuff on down there in this branch, it was quite a piece from where we robbed the car, down on the west end."

Mr. Mobley, railroad agent, testified that he had possession of all freight cars standing in the yards, and had the right to direct the loading and unloading of the cars. After testifying to his want of consent to breaking and entering of the car, he says, "If any goods were taken from a box car, if it was broke and entered by either Tom Davis or Charley Thornton, either or both, it was done without my consent. I could not tell you how many cars have been broken open since in February or March, I don't know. I don't know the negro Lee Thornton. He did not work for me over there any time that I know of. I could not say personally whether there was a box car broke open on the 4th day of March or not, I don't know whether there was a box car broke open about that time or not, of my own personal knowledge, I don't know. I couldn't say that Tom Davis or

Lee Thornton took any goods from any of those cars or not. We missed a good deal of goods. I don't know what particular car you are talking about, I didn't testify as to any particular car. There has been all kinds of goods recovered by the sheriff's department. I don't know exactly, without going back to the records, what was recovered. I don't know of any goods at all that Lee Thornton or Tom Davis took out of that car. I don't know of any car that was broke open in March." He further testified: "I did not of my own knowledge know of a box car being broke open about the 4th day of March. I saw some of these goods after they were turned over to the railroad company by the sheriff. I don't know whether they were the goods Tom Davis was charged with taking or not. I understand they were the goods that were found buried out here; those goods were never in my possession before that I know of, personally. I don't know that they were ever in any box car. A part of them goods were shipped to Fort Worth at the order of our claim department, and part of them, I think, were shipped to owners. No one ever claimed the goods that were buried out there that I know of, not of my knowledge. I am the agent here. Of my own personal knowledge, I had no knowledge of a box car being broke open on or about the 4th day of March. I don't have any recollection of anybody reporting that to me. I don't know, though, that there was any car out there that was ever broke open. I don't know anything about that. There are plenty stores that handle underwear and socks, etc., and all of the goods that were found out there; there are plenty stores in Palestine and adjoining, all of these towns handle such goods as those."

Thornton, on further examination, says he went to the penitentiary from Dallas for selling whisky, bootlegging; that he had never been to any other penitentiary; that he had been convicted for fighting and such as that, and for gambling; that he had been in Palestine when he burglarized the railroad car about two weeks; that he had been out of the penitentiary about two weeks altogether. He says, "I didn't burglarize the car, I helped carry the stuff away. When I was first arrested I claimed I didn't do it. Mr. Guinn did not tell me that he would go out and search my mother's house." Thornton testified that he and appellant burglarized the car and secreted the goods taken from it, and then resealed the car. That on the night afterwards appellant borrowed a buggy from a friend, and they went down the railroad in the neighborhood of where these stolen goods had been secreted. In the meantime these goods had been found and reported to the officers. The officers show that appellant and Thornton were down in that neighborhood that night in a buggy. They did not get any goods and did not tell where the goods were, and the officers arrested them. The defendant claimed he was there to meet some girls at the instance of Thornton, and that he borrowed the buggy for him and Thornton to go down there and meet these girls. Appellant denied the whole matter;

claiming to nave had nothing to do with it and had no interest in the matter, and did not burglarize the car.

When the officers examined or-searched the house of the witness Thornton, or his mother's house where he lived, they found a lot of goods which Thornton says was a part of the goods they had taken out of the car the night they burglarized it, they having hid the balance of it. They examined the house where appellant lived and found nothing. Appellant had on a pair of black socks which Thornton claimed was a part of the goods, and the officers said were the same character of goods. This was all of the goods found on appellant. Thornton had on a pair of white socks which resembled the goods that were found.

The main question in the case is the sufficiency of the evidence. Omitting the testimony of the witness Charley Lee Thornton, there is no evidence that a box car was opened on the 4th of March. No claim has been put in to the company for these goods, as we understand the record. Mobley, the agent, states no one ever claimed the goods that were buried out there within his knowledge. Omitting the testimony of Thornton, the accomplice, who swore he was an accomplice, if there is any fact or evidence that the box car was opened on the 4th of March it has escaped our attention. In order to convict in a case of this character it is necessary that a burglary be committed and committed as charged in the indictment. No witness testified to the breaking of the car except Thornton. The burglary of the car or the breaking of the car can not be proved by the witness Thornton so as to hold appellant responsible. He must be corroborated as to the fact that the car was burglarized. No witness undertook to show or swear that the car was burglarized at that time and place. The goods were not identified; nobody claimed them, and if it be conceded that the goods were stolen, that is not sufficient. It must be shown by testimony tending to connect the defendant with the burglary beyond the testimony of Thornton and that the burglary occurred. It might be accepted under this record and the facts and circumstances that if the amount of goods taken from the car as indicated here were taken from it, that somebody who had shipped these goods or was entitled to receive them would have made some claim for their loss. The agent, Mobley, testified that no such claim was made. Thornton only testified the car was broken. This matter was discussed and settled by Judge Hurt in the case of Welden v. State, 10 Texas Crim. App., 400. Thornton's evidence is not sufficient to show that appellant was there. The State does not undertake to corroborate him that the car was broken or defendant was present when the car was broken. It does not undertake to corroborate him that the goods mentioned came out of the car. We are cited to some cases; one of them is Martin v. State, 21 Texas Crim. App., 1. It will be noticed upon an inspection of that case, which perhaps is the strongest one in favor of the State, the State shows conclusively and independently of the accomplice that

a burglary was committed; that a store was entered, burglarized and an iron safe taken out and money taken from it. The State did not rely upon the accomplice to prove the burglary; that was proved by unquestioned testimony independent of the accomplice. In this case there is no attempt to corroborate the accomplice as to the burglary. So the difference between the two cases is easily noticeable. In the Martin case a store was burglarized, an iron safe taken out, entered from the back of the safe, and the money taken from it. The accomplice need not have testified, because the State in that case made ample proof. The accomplice was really worth nothing in that case except to furnish the means by which other testimony could connect the defendant with it. In this case there is no corroboration of the accomplice at all or that the car was ever burglarized by anybody. This testimony, in our judgment, is wholly insufficient to show that Davis, appellant, was connected with the burglary of the car, if Thornton's testimony is omitted from the record. Appellant was not found in possession of any of the goods at any time or anywhere, unless it was a pair of socks. Thornton admitted carrying a lot of the stolen goods to his mother's house, where the sheriff found them. If appellant and Thornton went down in the neighborhood where the goods were secreted on the night after the alleged burglary, they did not have possession of the goods. The sheriff arrested them before they got possession of the goods, if they were there for that purpose, and, therefore, he was never in possession of any of the goods, unless it be the pair of black socks mentioned, and they were not identified outside of the testimony of the accomplice as having come from that car. This did not prove the car was burglarized or tend to corroborate Thornton that the car was burglarized.

Believing this testimony is not sufficient the judgment is reversed and the cause is remanded.

*Reversed and remanded.*